■ JOYCE WALDON, Respondent, v LITTLE FLOWER CHILDREN'S SERVICE et al., Appellants, et al., Defendant. [764 NYS2d 49] —Order, Supreme Court, Bronx County (Howard Silver, J.), entered December 19, 2002, which, in an action for personal injuries sustained when plaintiff foster mother was stabbed by defendant biological mother (Alves) just outside the entrance of defendant foster care agency's premises, denied the agency's and defendant Roman Catholic Diocese's motion for summary judgment dismissing the complaint as against them, affirmed, without costs.

The stabbing occurred immediately after a visit by Alves with the child that was scheduled and supervised by the agency. The three-year-old child had been placed with the agency when she was three weeks old because of Alves's schizophrenia. The agency had recently instituted a proceeding to terminate Alves's parental rights on the ground of mental illness and plaintiff had expressed her desire to adopt the child. Alves had a history of noncompliance with treatment and, according to the agency's caseworker, was agitated and behaving erratically during the visit. The caseworker allowed the visit to continue even after Alves tried to leave the agency's premises with the child, in violation of clearly understood rules.

This "confluence of factors" raises an issue of fact as to whether the attack was reasonably foreseeable, "triggering the need for protective action" (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 254, 252 [2002]). That Alves had only expressed anger in the past without acting on it did not make the attack unforeseeable as a matter of law (*see id.*). The agency's argument that even if the attack were foreseeable it did not owe plaintiff a duty of protection while on its premises ignores the fact that plaintiff did not happen upon the agency's premises but was told by the agency to go there with the child for the purpose of a visit by Alves (*see Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 233 [2001], distinguishing *Waters v New York City Hous. Auth.*, 69 NY2d 225, 228-231 [1987] from *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 518-519 [1980]). There is no "specter of limitless liability" here (*id.*).

A different result is not required simply because the stabbing occurred on a public sidewalk a few feet outside the agency's entrance. According to plaintiff, while the actual stabbing took place on the sidewalk, the incident began in the vestibule when Alves grabbed the child's hand and words were exchanged, and ended in the vestibule, where plaintiff collapsed. The dissent's conclusion that the agency had relinquished any control over the transaction that had brought the parties together ignores this fact. Moreover, during the visit, after Alves had tried to leave the agency's premises with the child, the caseworker, "as a compromise," allowed her to continue the visit on condition that she stay with the child just outside the entrance to the building, "where [he could] observe through the partition glass at the doors." The dissent's conclusion that the agency had no control over the public street ignores this fact, which, at the least, raises a triable issue as to the agency's ability to supervise Alves at the time and place of the attack. *Diakakis v Bedrick* (236 AD2d 274 [1997]), cited by the dissent, is inapposite. In that case, we held that the defendant could not be held liable for injuries that occurred outside of her apartment in an area of the building not under her control and that were caused by a guest whom she had no opportunity to supervise.

The action should not be dismissed as against defendant Diocese without evidence sufficient to satisfy its initial burden of showing that it does not own or exercise supervisory control over the agency (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

We have considered defendants-appellants' other arguments and find them unavailing. Concur—Nardelli, J.P., Rosenberger, Ellerin and Gonzalez, JJ.

Tom, J., dissents in a memorandum as follows: Since I see no basis for imposing liability on defendants on these facts, and find no basis to conclude that there remains any unresolved factual dispute, I would reverse and grant summary judgment to defendants. The stabbing occurred on a public sidewalk near Little Flower's offices on Joralemon Street in Brooklyn. Plaintiff was a foster parent for the child, who was removed from the natural mother shortly after birth due to the mother's schizophrenia. The relationship between plaintiff as a foster parent and Little Flower as the private foster care agency was governed by a written agreement. The birth mother was allowed visitation with the child after birth, but that was not unusual and visits between birth parents and children are, pro forma, supervised. In May 1996, plaintiff was informed that

proceedings to terminate her parental rights based on her mental illness had commenced and that the child, then three years of age, would be placed for adoption. In June 1996, plaintiff indicated her interest in adopting the child. On August 15, 1996, plaintiff and the child went to Little Flower's offices for a scheduled visitation with the mother, and, upon meeting the new adoption caseworker, indicated that the mother had not been making scheduled visits. The mother arrived, late, shortly thereafter, and seemed upset. When the caseworker spoke privately with the mother, she seemed slightly agitated. After the private conversation, she seemed to roll her eyes and otherwise appeared somewhat strange. When the mother tried to leave the building with the child in violation of Little Flower's rules, personnel had to bring her back. As the mother's uncooperativeness continued, the caseworker terminated the visit. However, there is no evidence that she otherwise acted odd, and certainly not violently, as she left. The mother, plaintiff and the child all proceeded through the first floor toward the exit, where they were observed by a security guard and a receptionist, neither of whom observed anything unusual. Parenthetically, the security guard's responsibilities extended only to the premises and not to the street outside. No one saw a weapon at any point, nor observed any indication that violence might ensue. In fact, they seemed to be holding hands. Plaintiff testified, though, that as they exited, the mother grabbed the child's hand, produced a knife and then stabbed plaintiff in the chest. Plaintiff testified that this occurred outside the building, although she contends that the mother started to grab the child's hand in a vestibule by the entrance. A witness also established that the location of the stabbing was outside the building's entrance. The mother was immediately disarmed and secured and first aid was provided to the plaintiff.

The caseworker testified regarding his extensive experience. He established that even while termination proceedings are ongoing, parents still enjoy visitation rights, but that all visits are supervised as a safety measure. If the parent's conduct during the supervised visitation upsets the child, or if rules are not followed, or if there is a history of violence by a parent, visitation will be suspended. The caseworker testified that if the mother had manifested violence or seemed to threaten plaintiff during the visit, the visit would have been immediately terminated. Although Little Flower concedes being aware that the mother had been diagnosed with schizophrenia, and that she was under medical care in that regard, it had no knowledge that she had any violent propensities and, in fact, none

are shown in this record, excepting the act that gave rise to the present injuries.

Notably, the assault occurred on a public street over which Little Flower exercised no control, at a point in time when Little Flower had relinquished any and all control over the transaction that had brought the parties together. Hence, Little Flower cannot be held responsible in common-law negligence as a premises owner (*see Ramsammy v City of New York*, 216 AD2d 234, 236 [1995], *lv dismissed and denied* 87 NY2d 894 [1995]; *White v Celebrity Lounge*, 215 AD2d 650 [1995]; *Diakakis v Bedrick*, 236 AD2d 274 [1997]). Contrary to the majority's position, the fact that the caseworker permitted the mother to briefly remain outside the building with the child but within his view from the partition glass of the doors is irrelevant. After that time period the mother was directed to return inside the building. She complied. But when she attempted to leave the premises again with the child, the caseworker terminated the visitation. As previously noted, the attack took place outside the building after the visit was terminated. Hence, factually, there was no permission granted after the termination of the visit that in any manner suggested supervision. I disagree with the majority's legally untenable attempt to somehow expand the premises' perimeter into the public sidewalk by correlating liability with the brief period of time the mother had been allowed to remain outside the premises. Moreover, the agency's obvious concern was that the mother would try to walk away with the child and not that she would engage in spontaneous violence toward plaintiff.

Although the mother and plaintiff had emerged together from defendant's premises, nothing that occurred on the premises would have alerted defendant's security to an impending assault. Moreover, plaintiff has not demonstrated any duty of care to her that would oblige defendant Little Flower to have taken any further precautions to protect her from an assault by a third party under these circumstances. No special relationship existed between plaintiff and Little Flower such as would oblige Little Flower to protect her from the conduct of others (*see Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 8 [1988]). The only relationship between them arises out of the foster parents agreement which sets forth the foster parent's obligations concerning the care of the child and cooperation with the agency, as well as the parties' legal rights and obligations, circumstances that do not establish a special relationship between them.

Conversely, Little Flower had no control over the third-party

mother (*see id.* at 8-9; *Ramsammy, supra*), nor any basis to conclude that control should have been asserted (*see D'Amico v Christie*, 71 NY2d 76, 85 [1987]). There is no evidence of intoxication (*see id.*) nor any evidence, notwithstanding her mental illness, that the mother was likely to be violent, and, aside from some history of substance abuse, she had no criminal history that would have alerted Little Flower to potential violence (*see DiCarlo v City of New York*, 286 AD2d 363 [2001]). There had been numerous visitations made by the parties in the past with no prior incidents. Nor was Little Flower in a supervisory capacity over the mother; it had no authority to stop the mother from leaving the premises as she chose. Little Flower only supervised the visit, and, as noted above, the visit had already been terminated because the mother broke the rules by taking the child out of the premises, and not because of a threat or indication of violence. We cannot impose a legal duty on Little Flower that, in effect, makes it an insurer for plaintiff's injuries (*see D'Amico*, 71 NY2d at 86). For that reason, even aside from the absence of a duty of care to protect plaintiff from a third party, there is no evidence in the record that any violence, let alone attempted murder, was foreseeable. Foreseeability is distinct from plaintiff's burden of demonstrating a duty of care, and in the absence of a prima facie showing of a duty of care, foreseeability need not even be reached. Nevertheless, a failure to demonstrate foreseeability also requires dismissal (*see Pulka v Edelman*, 40 NY2d 781, 785-786 [1976]; *DiCarlo, supra*). At most, this assault was spontaneous and impulsive, for which Little Flower, either as premises owner or as contract vendee, could not be held liable (*see Pulitano v Suffolk Manor Caterers*, 245 AD2d 279 [1997]). Even if the mother had grabbed the child's hand as they emerged from the vestibule, Little Flower was not on notice that this would rapidly escalate into violence (*see Woolard v New Mohegan Diner*, 258 AD2d 578 [1999]). Hence, I see no basis on which Little Flower should have been deprived of summary judgment. Finally, no record evidence is presented to controvert defendant Diocese of Brooklyn's averments that it had no relationship with defendant Little Flower in regard to the provision of foster care, and hence, as a matter of law, no liability may be imposed against it for plaintiff's injuries.